ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN M. ETHERIDGE

                Plaintiff

      v.

ALLIED BARTON SECURITY SERVICES LLC

                Defendant

COMPLAINT

**VITALIANO, J.**

**ORENSTEIN, M.J.**



RECEIVED
APR 06 2012
PRO SE OFFICE

ORIGINAL

**CV12-1745**

This action is brought for discrimination in employment pursuant to:

✓    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. section
2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act
of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).

      Age Discrimination to Employment Act of 1967, as codified, 29 U.S.C.
section 621 – 634 (amended in 1984, 1990, and by the Age Discrimination
in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights
Act of 1991, Pub. L. No. 102-166).

      Americans with Disabilities Act of 1999, as codified, 42 U.S.C. section
12112 – 12117 (amended by the ADA Amendments Act of 2008, Pub. L.
No. 110-325 AND THE civil Rights Act of 1991, Pub. L. No. 102-166).

NOTE: In order to bring suit in federal district court under Title VII, Age Discrimination
in Employment Act, and Americans with Disabilities Act, you must first obtain a right to
sue letter from the Equal Employment Opportunity Commission.

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. section 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. section 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1.  Plaintiff resides at:

   137 Martense Street Ground Floor

   Kings, NY, 11226, (718) 622-7833
   County   State   Zip Code   Telephone Number

2.  Defendant(s) reside at, or its business is located at:
   ALLIED Barton Security Services LLC ℅ Eckert Seamans CHERIN & Mellott, LLC
   10 Bank Street Suite 700
   Street Address

   New York, WhitePlains, NY, 10606
   County   City   State   Zip Code

3.  The address at which I sought employment or was employed by the defendant(s) is:

   1 Madison Ave. /aka/24 East 24th Street /aka/320 Park Ave South
   Street Address

   New York, New York, NY, 10010-3629
   County   City   State   Zip Code

4.    The discriminatory conduct of which I complain in this action includes
(check only those that apply).

_____    Failure to hire.

✓    Termination of my employment.

✓    Failure to promote.

_____    Failure to accommodate my disability.

_____    Unequal terms and conditions of my employment.

_____    Retaliation

_____    Other acts (specify): _____

NOTE: *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5.    It is my best recollection that the alleged discriminatory acts occurred on:
*See attached Statement*
Date(s)

6.    I believe that the defendant(s) (check one)

_____    is still committing these acts against me.

✓    is not still committing these acts against me.

7.    Defendant(s) discriminated against me based on my:
(check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged)

[ ]    race _____    [✓]    color *Hair texture/length*

[ ]    gender/sex _____    [ ]    religion _____

[ ]    national origin _____

[ ]    age _____    My date of birth is: _____
Date

[ ]    disability _____

NOTE: *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8.    The facts of my case are as follows:

SEE ATTACHED STATEMENT.

The plaintiff prays that the Court grant relief for:
compensatory damages : $922,044.00
punitive damages : $65,147.00
Total relief amount : $987,191.00
Additional relief appointed via court decision;

(Attach additional sheets as necessary)

**Note:**    As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.

9.    It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: _____.
                                                                                Date

10.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: 12/27/11 .
                                                                                Date

Charles Patterson (Account Manager) for Allied Barton Security Services LLC (defendant), engaged in a bias, harassing, and discriminatory behavior towards the plaintiff. This behavior commenced, when Charles Patterson became the account manager for the One Madison Avenue building, over three years ago. The plaintiff was denied wages that were allocated via a budget semi-annually, by Credit Suisse LLC, (client). The wages of time and a half per hour were for preventative maintenance assignments with the One Madison Avenue building management fire alarm company. The plaintiff's assignment was to monitor and assist fire alarm company personnel, while testing devices from eight o'clock post meridiem to seven o'clock ante meridiem the next morning, for three to four weeks. The plaintiff never received the proper time and a half wages per hour, over a three-year period. Charles Patterson instead denied the plaintiff wages by applying a forty hours or more overtime policy, which would coincide with the Department of Labor overtime policy. The plaintiff was not knowledgeable of the time and a half wage rate allocated via budget from Credit Suisse LLC (client). Co-worker Neville Reid informed the plaintiff in September 2011, that preventative maintenance assignments are always time and a half hourly wages, and over forty hours overtime

doesn't apply. Another co-worker, Hugo Orazco, who also was denied proper wages the only time he performed the preventative maintenance assignment, also confirmed this. Charles Patterson created an atmosphere of bias and harassment for the plaintiff. The office personnel of five licensed Fire Safety Emergency Action Plan Directors, was restricted to only the plaintiff and co-worker Marc Wong working any open shifts. Charles Patterson would not utilize other co-workers of the office, Victoria Houser, who has seniority with Allied Barton Security Services, and Hugo Orazco who was terminated from another Allied Barton Security Services account location along with Charles Patterson. Earl Persaud (Account Manager) stated to the plaintiff in a meeting once, that he (Charles Patterson), is letting her (Victoria Houser), "get away with too much now". The plaintiff was subjected to this atmosphere till his wrongful employment termination. Charles Patterson rescinded scheduling for the plaintiff's office over three years ago, laying the foundation for monopolizing the time, and withholding of proper wages for the employee he preferred to use (plaintiff), per his discretion.

Charles Patterson on the second day of July 2011 (Saturday), phoned the plaintiff at his office. He stated

to the plaintiff, that semi-annual preventative maintenance testing was scheduled for the upcoming week. He stated that he needed the plaintiff to work the fifth day (Tuesday) and the seventh day (Thursday) of July 2011. Charles Patterson stated that he had given the plaintiff's co-worker, Marc Wong the day off for his birthday (Wednesday), sixth of July 2011. He stated that he really needed the plaintiff to work those two days, and that the plaintiff would receive the time and a half wage rate, if the plaintiff complied. This was the first time that the plaintiff ever heard of time and a half wages associated with the semi-annual preventative maintenance assignments. The plaintiff is now being offered the proper wages as a bonus incentive, but the plaintiff was always to receive these wages originally when performing these assignments. Also mentioned was co – worker Marc Wong's constant and only availability for these assignments. The plaintiff stated this information to Michael Campy of Credit Suisse LLC, Corporate Security and Earl Persaud, Account Manager for the Eleven Madison Avenue building at the plaintiff's office, on the twenty-ninth day of August 2011 (Monday).

On the twenty-sixth day of August 2011 (Friday), the plaintiff while listening to 1010 WINS news radio station, it was broadcasted that the MTA was considering postponing all transit services for the metropolitan area. This was to take place on the twenty-seventh day of August 2011 (Saturday), at twelve post meridiem. Local television news stations also confirmed this information. The plaintiff telephoned the office of Charles Patterson between eight and eight thirty in the morning, on the twenty-sixth day of August 2011 (Friday). Charles Patterson's voicemail service answered, instructing the plaintiff to contact John Curran (Portfolio Manager/Allied Barton Security Services) if this was an emergency. The plaintiff phoned and spoke with John Curran stating that, he would not be able to report for his regular weekend shifts, the twenty-seventh and the twenty-eighth days of August 2011, per the emergency shutdown service of the MTA. The plaintiff stated to John Curran that he could not be stranded at work for forty-eight hours straight, due to the MTA being the plaintiff's means of transportation. John Curran informed the plaintiff that his staff was discussing the Hurricane Irene situation at the time of plaintiff's phone call. John Curran informed the plaintiff that Credit Suisse LLC (client), requested twenty-four hour coverage for the hurricane weekend. He

stated that was a ludicrous request per the client's wishes, and that the plaintiff should try to report to work, and make some money. The plaintiff informed John Curran that reporting for work, to be stranded for forty-eight hours was not possible. John Curran informed the plaintiff that someone would be contacting the plaintiff later on that day. That someone else was Charles Patterson, phoning the plaintiff three times later. The plaintiff reiterated to Charles Patterson, that it would not be possible to report to work for forty-eight hours straight during a natural disaster weekend.

On the twenty-ninth day of August 2011 (Monday), the day after Hurricane Irene, the plaintiff was visited at his office by Credit Suisse LLC representative (Michael Campy/Corporate Security) and Earl Persaud. They were investigating under the premise why the plaintiff's office personnel never reported for work over the hurricane weekend. The plaintiff informed them that he spoke with both John Curran and Charles Patterson, via telephone conversations on the twenty-seventh day of August 2011, (Friday). These phone conversations are in accordance with Allied Barton Security Services policy statement regarding call off procedures (See Exhibit 'C' document). Michael

6

Campy discovered while at the plaintiff's office through a series of questions he asked, and plaintiff's statements, that Charles Patterson had no organized structure of the office daily operations, scheduling for office personnel absent, nor the formulation of contingency planning in case of emergencies (i.e. Hurricane Irene).

On the twelfth day of September, 2011 (Monday), the plaintiff's co-worker, Marc Wong informed the plaintiff, that the co-worker received a disciplinary counseling statement for refusing mandatory overtime per Charles Patterson. This would be the co-workers second disciplinary counseling statement, which according to Allied Barton Security Services policy, meant termination. The co-worker stated to the plaintiff, "See this is the thanks I get!" On the fourteenth day of September 2011 (Wednesday), Marc Wong requests from the plaintiff, the phone number of the District Manager, Steve Winters of Allied Barton Security Services. The plaintiff informed Marc Wong that he should speak to Steve Winters superior, but Marc Wong refused to violate the chain of command. The plaintiff furnishes Marc Wong with the phone number, and then co-worker exits the office. Later that afternoon, co-worker Marc Wong returns to the plaintiff's office, stating he has to relieve the

plaintiff so the plaintiff can attend a meeting with
Charles Patterson at Eleven Madison Avenue. Present at this
meeting were the plaintiff, Charles Patterson, and Earl
Persaud. Charles Patterson proceeded to state the purpose
of the meeting was because the plaintiff allegedly
committed infractions per company policy. First mentioned
was, not reporting to work the hurricane weekend, and
secondly refusing a mandatory overtime shift. The plaintiff
debated at the meeting, that both infractions were invalid,
and that Charles Patterson was now trying to gain leverage
and control over the plaintiff's employment with invalid
documentation, in a retaliatory manner, seventeen days
after Hurricane Irene because Credit Suisse LLC (client)
reprimanded Charles Patterson. The plaintiff discussed
vehemently with Charles Patterson over how he was managing
the account, exempting co-workers from shifts via
favoritism, and monopolizing the plaintiff's time to use at
his discretion. The plaintiff refused to endorse the
disciplinary counseling statement (see exhibit 'A'
document). Before exiting the meeting, the plaintiff
informed Earl Persaud to prepare all necessary documents
pertinent to plaintiff's employment at the One Madison
Avenue account. While outside the office of the meeting,
the plaintiff overhears Earl Persaud state to Charles

Patterson, "Charles don't mess with that guy, he's the reason that building is quiet". Charles Patterson's reply was "then he should cut his hair".

The plaintiff received a phone call from Charles Patterson on the sixteenth day of September 2011 (Friday). Charles Patterson requested for the plaintiff to report to 99 Madison Avenue (Allied Barton Security Services/Human Resources). The plaintiff informed Charles Patterson that he would not be able to report that day, and was informed by Charles Patterson not to report for my weekend shifts, until the plaintiff attends human resources. The plaintiff reported to human resources office on the twenty-second day of September 2011 (Thursday). Charles Patterson and the plaintiff were only in attendance. Charles Patterson informed the plaintiff, he was terminating the plaintiff's employment from Allied Barton Security Services (see exhibit 'C' document). The plaintiff read the disciplinary counseling statement, selected "I disagree with the statement above", check box, and endorsed the statement. Charles Patterson wrongfully terminated the plaintiff in a retaliatory, discriminatory, and vindictive manner.

Charles Patterson was terminated a few weeks after from the Credit Suisse LLC account at One Madison Avenue, and from Allied Barton Security Services LLC.

## PLAINTIFF QUESTIONS

A) What is the policy of the New York State Department of Labor, for employees working sixteen hours or more consecutively?

B) Why did the plaintiff only receive disciplinary counseling statement documentation, for not reporting to work the hurricane weekend seventeen days afterwards, but co-worker Victoria Houser did not?

C) Why would the plaintiff report for work the hurricane weekend, knowingly that he would not be able to return home, because his means of transportation (MTA), terminated service on August 27, 2011 at 12 noon?

D) Why was the information on preventative maintenance assignments wages (time and a half per hour), kept from the plaintiff for three years?

E) Why Laura Gift (Senior Human Resources Advisor) for Allied Barton Security Services LLC, never telephoned the plaintiff with her investigative conclusions regarding the plaintiff's termination, per our phone conversation in early November 2011?

F) Why during the hurricane weekend only one shift, the 7am to 3pm was covered by licensed personnel for the office, Gary D'Auito (Cushman & Wakefield watch

engineer), and the other forty-hours were covered by non-licensed Allied Barton Security Services personnel, which is not in accordance with the client's and third party vendor's contract?

G) If the client demanded from the third party vendor, forty-eight hour coverage for the hurricane weekend, sixteen of those hours were to be covered by Cushman & Wakefield licensed watch engineers, who cover the 11pm to 7am overnight shift anyway?

H) Why neither the client or third party vendor, once the MTA announced that service would be discontinued on August 27, 2011, provide for transportation via a cab and voucher, once the plaintiff's means of transportation was discontinued?

I) Why did the plaintiff receive a disciplinary counseling statement (see exhibit 'A' documentation), as a final written, when the plaintiff never received any disciplinary documentation before from Allied Barton Security Services?

**Only litigants alleging age discrimination must answer Question #11.**

11.    Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct (check one),

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

12.    The Equal Employment Opportunity Commission (check one):

_____    has not issued a Right to Sue letter.

✓    has issued a Right to Sue letter, which I
received on _1 - 13 - 2012_ .
Date

**NOTE:**    Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
Commission to this complaint.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, costs, and attorney's fees.

_John M. Etheridge_
PLAINTIFF'S SIGNATURE

Dated: _4/06/2012_
_gwe_

_137 Martense Street_
Address
_Brooklyn, NY 11226-3303_
_(718) 622-7833_
Phone Number



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
District Office: (212) 336-3620
TTY (212) 336-3622

John Etheridge
137 Martense Street
Brooklyn, NY 11226

Re:    EEOC Charge No. 520-2012-00552
       Etheridge v. Allied Barton Security Services

Dear Mr. Etheridge:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information and evidence you submitted. Based on this evaluation, we can not conclude that you were subjected to an adverse employment action motivated by discriminatory animus as defined by Commission guidelines and federal law. Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights. If you wish to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice.

Please contact Investigator Thomas Perez at (212) 336-3778 if you have any questions.

Sincerely,

For

Kevin Berry
District Director

1 – 13 – 12
Date

enc.

Exhibit "A"

<u>CLICK HERE TO PRINT THIS SHEET</u>

 **ALLIED-BARTON**
SECURITY SERVICES

**Disciplinary Counseling Statement**

**Employee Name:** John Etheridge

**Date:** 9/14/2011

**Employee #:** 156760

**Position:** Fire Safety Director     **Site:** Credit Suisse, NYC.

**Type of Disciplinary Action:** Final Written - Any further violation of AlliedBarton policy may result in Termination

**Nature of Infraction:** C2 Failure to perform job duties satisfactorily: #28 Refusal to accept assigned overtime when necessary

| |
|---|
| **Description of Incident:** FSD Etheridge has twice failed to report for duty as scheduled in the past three weeks. On 8/27/11 he did not report for duty on the morning prior to a hurricane. On 9/10/11, he was assigned mandatory OT for 9/12/11. He refused the assignment. |
| **Acceptable Standards :** Failure to perform job duties satisfactorily |
| **Plan of Action:** N/A |
| **Follow-up:** N/A |

**Employee Remarks:** Please check one of the boxes below and add any comments (If additional space is required, use reverse or attach a separate sheet).

☐ I agree with the statements above     ☐ I disagree with the statements above

REFUSED TO SIGN

| |
|---|
| *I have read and understand the nature of this warning and understand that any future violation of any company policy or failure to perform my job duties will result in further disciplinary action up to and including termination.* I also understand that if I disagree with the above I may submit a written statement, within five (5) days, to my file and/or request a review by a Regional Human Resources Representative. |

**Employee Signature:** _____     **Date:** _____
**Witness Signature:** _____     **Date:** 9/14/2011
**Supervisor Signature:** _____     **Date:** _____
**Account Manager Signature:** _____     **Date:** 9/14/2011
**Human Resources Representative :** _____     **Date:** _____

*Exhibit B*

CLICK HERE TO PRINT THIS SHEET

**ALLIED-BARTON**
SECURITY SERVICES

**Disciplinary Counseling Statement**

**Employee Name:** John Etheridge                                    **Date:** 9/22/2011

**Employee #:** 156760          **Position:** Fire Safety Director      **Site:** Credit Suisse, NYC.

**Type of Disciplinary Action:** Termination

**Nature of Infraction:** A6: Gross Insubordination

**Description of Incident:** On September 14th, 2011, disciplinary counseling was being administered to John Etheridge regarding post staffing and attendance. Mr. Etheridge"s words and actions during that session were grossly inappropriate and are the cause of this termination. He became very confrontational and spoke over me. Repeated requests to allow me to speak were ignored. My request for him to lower his voice resulted in him telling me: "I don"t have to lower anything, I"m talking to you the way that I need to talk to you". He stood up and approached me as if it were his intent to intimidate me. He used foul language: "Sh*t". However, when asked to mind his language, he did change the word. He insinuated that the management team had sided against him with white people. When asked what race had to do with the issue we were addressing, he stated that all the white people are no longer here, now he"s doing all of the white people"s jobs. Mr. Etheridge has a history of abrasive and combative behavior. On 9/27/08 he was counseled for similar behavior toward a supervisor. And on 10/28/09, he was counseled for similar behavior toward a coworker. That counseling session also turned into a loud and combative incident.

**Acceptable Standards :** When speaking to a manager or any person, common courtesy is expected from an individual who is in a customer service oriented profession.

**Plan of Action:** N/A

**Follow-up:** N/A

**Employee Remarks:** Please check one of the boxes below and add any comments (If additional space is required, use reverse or attach a separate sheet).

☐ I agree with the statements above          ☒ I disagree with the statements above

_____

_____

*I have read and understand the nature of this warning and understand that any future violation of any company policy or failure to perform my job duties will result in further disciplinary action up to and including termination. I also understand that if I disagree with the above I may submit a written statement, within five (5) days, to my file and/or request a review by a Regional Human Resources Representative.*

**Employee Signature:** *John M. Etheridge*          **Date:** 9/22/11
**Witness Signature:** _____          **Date:** _____
**Supervisor Signature:** _____          **Date:** _____
**Account Manager Signature:** _____          **Date:** 9/22/11

---

# AlliedBarton Security Services
# Policy Statement

## Human Resources – Attendance Policy

| | |
|---|---|
| **DATE APPROVED:** | 3/30/07 |
| **DATE REVISED:** | 10/27/09 |
| **SOURCE:** | Human Resources Department |
| **PREPARED BY:** | Deborah Brantley – VP – Human Resources |
| **Policy:** | Y |
| **Procedure:** | Y |

**Purpose:**
To provide policy guidelines for determining "chargeable" and "non-chargeable" absences, and defining how they should be dealt with.

**Person(s) Responsible:**
Employee's Supervisor / Manager
District Manager
Human Resources Representative

**Scope of Employees Covered:**
Hourly Contract Employees

**References:**
Absence Tracker

**Policy Statement:** In order to meet its commitment to our clients, it is the policy of AlliedBarton Security Services, hereinafter, the "Company," to discipline and/or terminate employees who are repeatedly unable to be at their posts as scheduled.

**Details:**

We must have trained security officers, in proper uniform, on duty, and on time for their assigned work schedules. Unfortunately, there may be times when employees are unable to work their scheduled shifts. When that happens, proper call-off procedures are expected to be followed. **Please note:  there are two separate disciplinary verticals – one for attendance issues as noted in this policy, one for all others.** The two verticals do not generally build on each other.

### Call-Off Procedures

It is absolutely critical that you give your supervisor as much notice as possible of your expected absence or tardiness on an assigned shift. **At a minimum, you are required to  page or telephone your account manager at least four (4) hours prior to your assigned shift if you will be absent due to illness or injury.** If your account manager is on vacation, you will page or telephone your Site Supervisor. **(Where site-specific post orders indicate the site supervisor is first contact, the order of contact is superseded by those post orders.)** Only if you are unable to reach your account

| AlliedBarton Security Services |
| :---: |
| Policy Statement |

# Human Resources – Attendance Policy

**DATE APPROVED:** 3/30/07
**DATE REVISED:** 10/27/09
**SOURCE:** Human Resources Department
**PREPARED BY:** Deborah Brantley – VP – Human Resources
    **Policy:** Y
    **Procedure:** Y

### Purpose:
To provide policy guidelines for determining "chargeable" and "non-chargeable" absences, and defining how they should be dealt with.

### Person(s) Responsible:
Employee's Supervisor / Manager
District Manager
Human Resources Representative

### Scope of Employees Covered:
Hourly Contract Employees

### References:
Absence Tracker

**Policy Statement:** In order to meet its commitment to our clients, it is the policy of AlliedBarton Security Services, hereinafter, the "Company," to discipline and/or terminate employees who are repeatedly unable to be at their posts as scheduled.

### Details:

We must have trained security officers, in proper uniform, on duty, and on time for their assigned work schedules. Unfortunately, there may be times when employees are unable to work their scheduled shifts. When that happens, proper call-off procedures are expected to be followed. **Please note: there are two separate disciplinary verticals – one for attendance issues as noted in this policy, one for all others.** The two verticals do not generally build on each other.

### Call-Off Procedures

It is absolutely critical that you give your supervisor as much notice as possible of your expected absence or tardiness on an assigned shift. **At a minimum, you are required to page or telephone your account manager at least four (4) hours prior to your assigned shift if you will be absent due to illness or injury.** If your account manager is on vacation, you will page or telephone your Site Supervisor. **(Where site-specific post orders indicate the site supervisor is first contact, the order of contact is superseded by those post orders.)** Only if you are unable to reach your account

manager or site supervisor, call the Service Assurance Center at 1-800-51-GUARD to report your situation. If a call to the SAC is placed, please expect a follow-up call from your supervisor or manager regarding the reasoning for your call-off.

AlliedBarton may request documentation to substantiate an absence at any time. If you are absent for three (3) days or more, you are <u>required</u> to provide written certification from a physician to return to work.

Failure to adhere to this policy – by 1) failing to call off at least four (4) hours in advance; 2) being late to your post for an assigned shift; or 3) being absent – may result in disciplinary action up to and including termination for flagrant or repeated violations.

**Chargeable Absences and Tardiness Include:**

1) Call offs for anything other than a death in the family. Illnesses will be considered a chargeable absence; however, multiple days off for an illness, with documentation, generally count as one chargeable absence. (Please note: employees with paid sick time available to them will not be "charged" for the medical absence as long as all other call-off rules are followed.)

2) Arriving late. (Generally, seven minutes determines whether someone is paid from "the hour" or from fifteen minutes after the hour; **however, an individual will be charged / disciplined for lateness regardless of AlliedBarton's system requirements to pay the wages.)**

3) Leaving early with manager approval, but without previously arranged coverage.

**Non-Chargeable Absences**

We know there are times that you need to be off. In that event, you must arrange to switch scheduled days off; however, no one is obligated to give up a shift to switch with you.

If you switch a day or shift with a fellow employee, you will <u>not</u> be charged with an absence. It must be a shift switch within the same pay week (Friday – Thursday) so that no overtime is incurred. All switches must be approved by either the Account Manager or the Site Supervisor.

You may request to use a vacation day; however this must be done with advance notice of at least one week before the schedules are posted to allow your supervisor to make the change. The Account Manager reserves the right to deny the use of vacation days during a particular pay week to prevent staffing problems.

If neither of the above is possible, the employee will be accruing a chargeable absence.

Additionally, approved or documented Leaves of Absence will not be "chargeable". Examples include FMLA, Military Leave, jury duty, etc.

**Termination will result if:**

1) You have 4 chargeable actions relating to attendance within a rolling 90 day period.

chargeable absence within a 90-day period will result in a verbal warning.
2 absences within a 90-day period will result in a written warning.
3 absences within a 90-day period will result in a final warning.
4th **absence within a 90-day period will result in termination.**

2) You are absent 3 or more consecutive days without a doctor's certificate. (A verified absence that requires 3 or more consecutive days off requires a doctor's release to return to work.) Note: manager should check with HR regarding FMLA or other leave eligibility.

3) You are a "no call, no show" for the second time. **(An arrival an hour or more late without a call will be considered a "no call / no show".)** If you are a no-call/no-show for a scheduled shift, it will result in a final warning for the first time and termination for the second time.

The only exception to this would be proof of a life threatening or other emergency that prevented you from notifying the Company. In this instance, an appeal may be made directly to the District Manager who will weigh the merits of the appeal and make a final decision.

4) **You leave early without supervisor approval. (This is considered abandoning post.)** If you leave early without supervisor approval, it will result in termination the first time it occurs.